UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| FERDINAND PADILLA-TROCHE, | |
| Plaintiff, | Civil No. 08-1140 (DRD) |
| | Crim. No. 06-111(DRD) |
| UNITED STATES OF AMERICA, | |
| Defendant. | 28 U.S.C. § 2255 |

**ORDER**

Pending before the Court is the Petition under 28 U.S.C. 2255 of Ferdinand Padilla-Troche

("Padilla-Troche") consisting of a *Memorandum of Law in Support of 2255 Petition* (Docket No. 1);

and, (b) *United States' Amended Response to Petitioner's Motion filed under 28 U.S.C. § 2255*

(Docket No. 7).  For the reasons set forth below, Padilla-Troche's petition is denied.

**Factual and Procedural Background**

On February 23, 2006, Padilla-Troche was arrested, and appeared before U.S. Magistrate

Judge Vélez-Rivé on the same date, on charges brought under a *Complaint* (Docket No. 1, Crim.

No. 06-111 (DRD)).  An *Indictment* followed the *Complaint* (Docket No. 17).  Padilla-Troche and

his common law wife were each charged in the *Indictment* with three substantive Counts in aiding

and abetting fashion for violations to 21 U.S.C. § 841(a)(1) (possession with the intent to distribute

5 grams or more (gross weight) per count of cocaine base ("Crack cocaine")), and violations to

18 U.S.C. § 2 (aiding and abetting to commit and offense).

The record shows that Padilla-Troche made a straight guilty plea on all three Counts of the

Indictment.[1]  *See Minutes* of November 2, 2006 (Docket No. 91, Crim. No. 06-111 (DRD)).  The

---

[1]     The Court notes that the Padilla-Troche's straight plea came after lengthy negotiations with the Government, as Padilla-Troche declined to agree to forfeit personal property.

Court accepted the straight plea, as Padilla-Troche agreed with the Statement of Facts presented by the Government (Docket No. 92), but objected the amount of drugs in excess of five (5) grams per Count.  *See* (Docket No. 91, Crim. No. 06-111 (DRD)).  *See also* Transcript of the November 2, 2006 Change of Plea Hearing, pages 43-48 (Docket No. 1, Civil No. 08-1140 (DRD)):

> THE COURT: Do you accept the basic facts surrounding the charges just explained?
>
> THE DEFENDANT: Yes.
>
> THE COURT: It is basically 5 grams or more of cocaine base, possession with intent to distribute in an aiding and abetting fashion, knowingly and intentionally possessing with intent to distribute.  You are accepting 5 grams or more per transaction.  After 5 grams, that amount will be determined in a hearing, but you're accepting at least more than 5 grams.  Do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: All right, per count.  Now, do you accept the basic facts surrounding the charges just explained?
>
> THE DEFENDANT: Yes.
>
> . . .[After the United States recited the specifics facts involved, counsel for the defense stressed the following caveat:]
>
> MR. RIVERA: Your Honor, the Defendant agrees with the statement of facts delineated by the Government with the exception he does not agree to the amounts that are stated therein as that there were, on September 20, 12.6 grams net weight of crack; September 22, 2005, 21.2; and on September 27th, 2005, the amount of 39.5 grams net weight.
>
> He thus asserts that the amounts are less than 50 grams of crack cocaine net weight.
>
> THE COURT: Okay.  Now, Defendant, do you accept the Government's version of facts at 5 grams or more per count?

THE DEFENDANT: Yes.

THE COURT: What you are, therefore, challenging is what is the amount more than 5 grams, but are accepting that there is at least more than 5 grams per count; is that right?

THE DEFENDANT: Yes, but not up to 50.

The colloquy shows an alert, knowing, defendant. The record shows that Padilla-Troche was sentenced, after he accepted at the plea colloquy specifically 50 grams of base cocaine at the sentencing hearing (see discussion infra), on February 2, 2007, all three Counts of the *Indictment*, for "possession with intent to distribute at least fifty (50) grams, but less than one hundred and fifty (150) grams of cocaine base, . . ." *See Judgment* (Docket No. 132, Crim. No. 06-111 (DRD)). Padilla-Troche was sentenced to be imprisoned for a total term of 120 months as to each counts 1, 2 and 3 to be served concurrently to each other. *See Judgment* (Docket No. 132, Crim. No. 06-111 (DRD)), *see also Minutes* of February 2, 2007 (Docket No. 131, Crim. No. 06-111 (DRD)). The Court notes that Padilla-Troche was represented by attorney Luis Rivera Rodriguez ("Rivera") at the plea hearing as well as at the sentencing hearing..

On January 31, 2008, Padilla-Troche through retained counsel Rafael F. Castro-Lang ("Habeas' counsel") filed a petition under 28 U.S.C. § 2255, to vacate the *Judgment* of February 2, 2007 entered in the Crim. No. 06-111 (DRD). Padilla-Troche essentially argues that due to the ineffective assistance of counsel Rivera, in Crim. No. 06-111 (DRD), he was unjustly sentenced to ten (10) years of imprisonment, as opposed to five (5) years (the statutory minimum), which was the original plea offer, for possession with the intent to distribute of at least fifty (50) grams of cocaine

base.[2]  Habeas' counsel argues:

> The narcotics of the [three] 3sales were sent to the laboratory and tests results revealed they had a net weight of 39.5, 21.2 and 12.6 grams (Exh. 4) [Civil No. 08-1140 (DRD), Docket No. 1], for a combined total of 73.3 grams.  Said lab results had been provided to defendant's counsel Rivera prior to 5/19/06 when they had been designated as evidence by the government.  (Exh. 5) [Civil No. 08-1140 (DRD), Docket No. 1].
>
> The Government tendered a plea agreement to Petitioner where the drug weights for purposes of sentencing were based on the amount of actual drug reflected in the lab results which were 9.1, 13.9 and 26.8 grams for a total weight of 49.8 grams which would avoid the triggering of a 10 year mandatory minimum.  As part of the plea agreement a forfeiture clause was included pertaining to civil In Rem litigation that was pending before the Court.  (Exh. 2) [Civil No. 08-1140 (DRD), Docket No. 1].
>
> Counsel Rivera advised Petitioner that the plea agreement was not worth accepting since the drug quantity in his sales based on actual amount did not exceed 50 grams so he would not be subject to the 10 year mandatory minimum and be entering a straight plea he would receive a sentence of less that 10 years and would not have to surrender all of the properties which was best left for resolution in the civil forfeiture case.  (Exh. 1)  [Civil No. 08-1140 (DRD), Docket No. 1].  As a result the forfeiture paragraphs were scratched out, signed by counsel Rivera and Petitioner and tendered for acceptance to the government (Exh. 2) [Civil No. 08-1140 (DRD), Docket No. 1], who rejected and withdrew the plea as a result of the removal of the forfeiture stipulation.
>
> . . .

---

[2]  The unaccepted plea offer was also conditioned to Padilla-Troche's forfeiture of certain properties, a condition that was unacceptable and non-negotiable to Padilla-Troche, at the time.  The amount of drugs contemplated when the original plea offer was proposed, was at least 50 grams of cocaine base.  At the Change of Plea hearing, the Government stated that "based on the amount of narcotics that were seized in this case and that can be proven by the United States at trial, the Defendant would be held criminally responsible for 73.3 grams of crack of cocaine base, which results in a guideline level of 32."  *See* Transcript of the November 2, 2006 Change of Plea hearing, page 31 (Docket No. 1, Civil No. 08-1140 (DRD)).  Notwithstanding, Padilla-Troche accepted the Statement of Facts presented by the Government (Docket No. 92, Crim. No. 06-111 (DRD)), that is, petitioner accepted that there were at least more than 5 grams per count, "but not up to 50," adding all three transactions. *See* Transcript of the November 2, 2006 Change of Plea hearing, page 48 (Docket No. 1, Civil No. 08-1140 (DRD)).

As result of counsel Rivera's advice Petitioner entered a straight plea believing he had grounds to attack the drug quantity and would be sentenced to less than 10 years without having to surrender all of his properties within the criminal case where no forfeiture count has been included.  (Exh. 1,7)  [Civil No. 08-1140 (DRD), Docket No. 1].

Counsel Rivera never informed Petitioner that drug quantity as a matter of law for purposes of sentencing would be calculated on the basis of the drugs net weight not actual drug amount and it was impossible for him to validly challenge the government's assertion at the change of plea hearing that Petitioner was subject to a 10 year mandatory minimum.  Had Petitioner been advised by his counsel this crucial matter he would have never made a straight plea and would have accepted the government's plea offer where he would have received a 5 year sentence instead of 10 years.

Even though counsel Rivera represented to the Court at the change of plea hearing that he was going to contest the drug amount because it was less than 50 grams (Exh. 7, pg. 12, 35, 47), at the sentence hearing he stipulated that the drug amount did in fact exceed 50 grams after reviewing "*all of the documents pertaining to the lab analysis*" thereby subjecting Petitioner to the 10 year mandatory minimum.  (Exh. 8, pg. 2-3).  However Rivera had the lab results prior to the change of plea hearing so he knew he would not be able to contest the drug amount as was represented to the Court and to Petitioner.

After obtaining new counsel Petitioner settled the civil forfeiture case transferring all of his assets to the government and the government returned all of the properties claimed by Petitioner's family members. (Exh. 6).[3]

The Government filed an *Amended Response to Petitioner's Motion filed under 28 U.S.C. § 2255* (Docket No. 7, Civil No. 08-1140 (DRD)).  The Government argues that Padilla-Troche's claim is centered on alleged ineffective assistance of counsel, which lacks merit, as counsel Luis Rivera Rodríguez provided the Petitioner with "effective legal assistance."  *See* Docket No. 7,

---

[3]     The record shows that the civil forfeiture action, Civil No. 06-1720 (CCC), was settled on November 28, 2007, that is, after Padilla-Troche had already been sentenced on February 2, 2007.

Civil No. 08-1140 (DRD)). "His performance was reasonable and did not prejudice Padilla-Troche's defense." *Id.* The Government addressed the claims raised by Padilla-Troche in the § 2255 motion, a summary follows.

• Padilla-Troche was advised to discard the forfeiture clauses in the proposed plea agreement, due to the fact that Padilla-Troche was unwilling to surrender his properties, and attorney Rivera had advised Padilla-Troche that the value of the forfeited properties well exceeded the amount of the transactions ($2,400.00). *See* Docket No. 7, page 5, Civil No. 08-1140 (DRD).

• As to the drug weight determination, the Government alleges that according to attorney Rivera, "the total drug weight of Padilla-Troche's distribution, based on actual amount of cocaine base "crack," did not exceed fifty (50) g., so Padilla-Troche would not necessarily be subject to the ten (10) year mandatory minimum imposed by 21 U.S.C. § 841(b)(1)(A)(iii) ... ." *See* Docket No. 7, pages 5-6, Civil No. 08-1140 (DRD). "According to Rivera, weight measurements for purposes of sentencing could be based on the amount of actual drug cocaine base "crack," reflected by the lab results (49.8 g.), as opposed to the total net weight of the narcotics mixture distributed (73.3 g.)." *Id.* "**Indeed, 21 U.S.C. § 841(b)(1)(A)(iii) does not specifically states that the net weight of entire mixture containing cocaine base "crack" is the basis for sentencing.** **See 21 U.S.C. § 841(b)(1)(A)(iii)**." *Id.* (Emphasis ours). "He [Rivera] thus asserted that Padilla-Troche could receive a sentence of less than ten (10) years without having to surrender the properties in the forfeiture stipulation by entering a straight plea." *Id.* "But he [Rivera] always left open the possibility that Rivera [sic] [Padilla-Troche] could face a minimum ten (10) year sentence if the judge determined that the quantity added up to 50 g. or more." *Id.*

• The Government further argues that, at the November 2, 2006 Change of Plea

hearing, Padilla-Troche was advised of the possibility that the drug weight may exceed 50 grams. Hence, the sentence to be imposed by the Court could fluctuate between five (5) years to life, depending on the drug weight, that is, if it exceeds 50 grams, the sentence could be ten (10) years to life sentence.   *See* Docket No. 7, pages 6-7, Civil No. 08-1140 (DRD).

•     The Government argues that Padilla-Troche's sentence would have been the same under the plea agreement, as the "sentencing would be based according the cocaine base mixture's net weight."  *See* Docket No. 7, pages 7-8, Civil No. 08-1140 (DRD).  At the Sentencing hearing, a determination was made by the Court that, for sentencing purposes, the drug weight "would be based according to the cocaine base mixture's net weight."  *Id.*  Judge Domínguez stated that "based on a total offense level of 29, and a criminal history category of three, the guideline imprisonment range [was] 108 to 135 months, but because there [was] a statutory minimum [imposed by the net weight] it changed from 120 to 135 months ... ."  *Id.*  Hence, based upon the statutory minimum imposed by 21  U.S.C. § 841(b)(1)(A)(iii),[4] the minimum sentence would be 120 to 135 months. The record of the Sentencing hearing held on February 2, 2007, shows that the Court advised Padilla-Troche that due to his prior criminal history, the Court could move to the middle of the Sentencing Guidelines, instead of the lower end.

---

[4]    21 U.S.C. § 841(b)(1)(A)(iii) provides, in its relevant part:

(b) Penalties
   Except as provided ... any person who violates subsection (a) of this section shall be sentenced as follows:
        (1)(A) In the case of a violation of subsection (a) of this section involving -
                (iii) 50 grams or more of a mixture or substance described in clause (ii) which contains cocaine base;
                . . .
such person shall be sentenced to a term of imprisonment which may not be less than 10 years ...

•      Attorney Rivera's legal advice did not prejudice Padilla-Troche. *See* Docket No. 7,

page 8, Civil No. 08-1140 (DRD). The Government alleges that "had Padilla-Troche signed the plea

agreement without objecting the forfeiture claims, he would have been sentenced to at least one

hundred twenty (120) months, the same as the statutory minimum sentence received once it was

determined that the total drug distributed would be measured according to the net weight[5] and that

it amounted to more than 50 g. [sic, 50 grams or more] (net weight). *See* Docket No. 1, Exhibit 8,

p. 16." *Id.*

### *The Hearing*

The Court held a hearing on October 31, 2008, on the 28 U.S.C. § 2255 petition filed by

Padilla-Troche. *See Minutes* of October 31, 2008, Docket No. 8, Civil No. 08-1140 (DRD). Habeas'

counsel appeared on behalf of Padilla-Troche, and AUSA María Domínguez and

AUSA Idalia Mestey appeared on behalf of the Government. Padilla-Troche did not attend the

motion hearing. *See* Civil No. 08-1140 (DRD), Docket No. 7.

At the hearing, Habeas' counsel argued that due to the ineffective assistance of

counsel Rivera, Padilla-Troche pled guilty and accepted the possibility that a sentence of ten

(10) years to life may be imposed, contingent on the determination of the drug amount at the

Sentencing hearing. However, now that Padilla-Troche had surrender his forfeited properties to the

---

[5]      A review of the proposed rejected plea agreement shows that, although Padilla-Troche was indicted on three Counts for possession with intent to distribute 5 grams or more (gross weight) of Cocaine base ("Crack Cocaine"), the statement of facts of the proposed plea agreement rejected by Padilla-Troche stated that, "[o]n September 20, 22 and 27, 2005 the defendant **sold** 9.1 grams (net weight), 13.9 grams and 26.8 grams, respectively, of cocaine base "crack" to law enforcement personnel at Cerrillo Ward in Cabo Rojo, acting with other individual." *See* Docket No. 1, Exhibit No. 2, Plea Agreement [**incomplete exhibit**], Civil No. 08-1140 (DRD). (Emphasis ours). The Court notes that the total amount of drug sold was approximately 49.80 grams. However, there is a clear difference between Padilla-Troche's amount of drug possession with intent to distribution, as charged in the *Indictment*, and the amount allegedly sold by Padilla-Troche. The penalties provided by 21 U.S.C. § 841(b)(1)(A)(iii) refers to possession with the intent to distribute, amongst other violations.

Government (after Padilla-Troche was sentenced), Padilla-Troche wished to reinstate the offer made by the Government in the proposed plea agreement, on the grounds of the drug amounts, as they appear in the laboratory results.[6]  Habeas' counsel argues that counsel Rivera failed to properly explain the results of the laboratory reports to Padilla-Troche, as the results show that if you add the three (3) "net weight" results, then you have a total amount of 73.3 grams of cocaine base ("crack"). However, using the same laboratory results, if you add the "amount of actual drug," then you have a total amount of 49.80 grams (less than 50 grams), the amount allegedly used for plea agreement purposes, conditioned that Padilla-Troche surrendered his forfeited properties to the Government, an issue that was non-negotiable for Padilla-Troche at the change of plea and sentencing hearings' stages.  Hence, Habeas' counsel concludes that counsel Rivera misled Padilla-Troche as to the amount of drugs, by improperly interpreting the laboratory results, when recommending the acceptance of the statutory minimum of ten (10) years, and keeping the forfeited properties, on the grounds that the value of the properties exceeded the value of the drugs' amount sold.

Habeas' counsel also alleges that Padilla-Troche only received a ninth grade education, hence, the matter is to be considered by the Court, which warrants that the sentence imposed be vacated and lowered to five (5) years instead of ten (10).

The Government vehemently objected, as Padilla-Troche cannot have two bites at the apple. The Government further argued that: (a) the argument made by Habeas' counsel is based on his personal inferences, instead of the Court record; (b) Padilla-Troche was explained by counsel Rivera that once the proposed plea agreement was rejected (as he did not want to surrender his forfeited

---

[6]	The Court notes that the labs results show that the amount of drug is classified under different categories, to wit: (a) Gross Weight; (b) Net Weight; (c) Conc. or Purity; (d) Amount of Actual Drug; and (e) Reserve Weight.  *See* Docket No. 1, Exhibit No. 4, Civil No. 08-1140 (DRD).

properties), and the Government's plea was withdrawn, the offer was withdrawn.  *See* Transcript of the November 2, 2006 Change of Plea hearing, Civil No. 08-1140 (DRD), Docket No. 1, Exhibit No. 7, page 12.

> MR. RIVERA: What he's [Padilla-Troche] stating [stated] to me – in Spanish, of course  – is that's willing [he is willing] to enter a guilty plea.  He's concerned about receiving 10 years because his plea offer was for five.
>
> **I have advised him that that plea offer has been withdrawn, has been withdrawn, and it is the Government's intention not to offer that again.  That it was withdrawn at the very same time that he [Padilla-Troche] decided to exclude the forfeiture clause from the agreement. He's concerned about receiving 10 years.**  That is a matter –
>
> THE COURT: I'm going to advise him what the maximum statutory limit is, and it's going to depend on the amount of weight that will be attributed to the drugs, that will be litigated before me, I imagine.
>
> MR. RIVERA: . . .  **And if it's less than 50, that weight of the narcotics, he could be exposing himself from five [5] to [forty] 40. If it's more than 50, as I have advised him, it will be more than 10 years**.  10 to life, actually.  (Emphasis ours).

Hence, the defendant was clearly expressed by counsel that he was facing a statutory sentence of at least five (5) to forty (40) years under 21 U.S.C. 841 (B)(iii).

The Government further argued that the fact that Padilla-Troche expressed to the Court his wish to proceed with the civil litigation regarding his forfeited properties, as well as his desire to the litigate and determine the drug amount in his Sentencing hearing, shows that Padilla-Troche knew exactly what he wanted to do, that is, to protect his properties.  In exchange Padilla-Troche agreed to plead guilty to more than five (5) grams per Count, but less than fifty (50) grams.  However, since the plea agreement, Padilla-Troche knew that he was exposed to an amount of drugs of more than

5 grams, and if the threshold was reached to the level of 50 grams of cocaine base he could be sentenced to a ten (10) year minimum up to a life sentence.  But even at only 5 grams per count, Padilla-Troche was facing five (5) years to forty (40) years, as to the facts charged in the *Indictment*, which he accepted, at the change of plea hearing.  Further, Padilla-Troche's sentence could be enhanced under 18 U.S.C. § 3553, by reason of prior criminal history under Federal and state crimes including dismissed state drug charges[7] and other not disposed pending drug accusations.   Padilla-Troche's prior criminal history shows that he had a criminal case in this District Federal Court, Crim. No. 94-198 (PG), wherein Padilla-Troche pled guilty to charges of possession with intent to distribute cocaine.[8]  Padilla-Troche also has a criminal history in State court, to wit, he has two (2) convictions for assault; one drug case still pending; three (3) drug cases that were dismissed, as well as a case for contempt of court, which was also dismissed.  Notwithstanding, under 18 U.S.C. § 3553, the Court may consider Padilla-Troche's prior criminal record, regardless of whether the criminal case was dismissed or not.

In view of the foregoing, it is clear that even if Padilla-Troche had only admitted to 49.80 grams of drugs, as opposed than 50 grams, the fact is that Padilla-Troche was not necessarily insulated from a sentence of more than ten (10) years as he had one serious felony federal criminal drug case, three dismissed state drug cases and other state drug  cases not decided. Hence, counsel at least knew and transmitted to defendant that the sentence could reach levels higher than ten years

---

[7]        The court can take into consideration dismissed state drug charges. Williams v. New York, 337 U.S. 242 (1949); Nicholas v. United States, 511 U.S. 738, 747-748 (1994).

[8]        The defendant was charged with conspiracy wherein he was charged with possession with intent to distribute 5 kilograms or more of cocaine. He accepted in a plea a personal responsibility of at least 300 but less than 500 grams of cocaine. (Defendant's PSR at 94-00198.)

by the federal statute of a sentence of five (5) to forty (40) years.  Hence, Padilla-Troche was not

insulated from receiving a ten (10) year or more statutory sentence, simply based on his prior serious

recidivism as to drug related criminal history.

Applicable Law and Discussion

A.    *The Sixth Amendment*.

The Sixth Amendment of the United States Constitution provides:

> In all criminal prosecutions, the accused shall enjoy the right to a
> speedy and public trial, by an impartial jury of the State and district
> wherein the crime shall have been committed, which district shall
> have been previously ascertained by law, and to be informed of the
> nature and cause of the accusation; to be confronted with the
> witnesses against him to have compulsory process for obtaining
> witnesses in his favor, **and to have the Assistance of Counsel for
> his defence**.  (Emphasis ours).

However, "[t]he Constitution guarantees only an 'effective defense, not necessarily a perfect

defense or a successful defense." *Peralta v. United States*, 597 F.3d 74, 79 (1st Cir. 2010), citing

*Scarpa v. Dubois*, 38 F.3d 1, 8 (1st Cir. 1994).  "The Amendment guarantees, among other things,

the right to counsel's effectiveness in those proceedings where a right exists also to have counsel

appointed or retained." *United States v. Parker*, ___ F.3d ___, 2010 WL 2652212, *2 (7th Cir. 2010

(June 16, 2010)), citing *Evitts v. Lucey*, 469 U.S. 387 (1985); *Glasser v. United States*, 315 U.S. 60

(1942); *Powell v. Alabama*, 287 U.S. 45 (1932).

B.    *The Standard of Effective Assistance of Counsel*.

It is well settled that a defendant claiming ineffective assistance of counsel must meet a two-

prong test: (a) counsel's representation was deficient; and (b) counsel's deficient performance

prejudiced the defendant. *See Parker*, 2010 WL 2652212, *2.  In *Parker*, the Court held, "counsel's

representation was deficient in that it fell below an objective standard of reasonableness and that counsel's deficient performance prejudiced him." *Parker*, ___ F.3d ___, 2010 WL 2652212, *2, citing *Strickland v. Washington*, 466 U.S. 668, 688 (1984).  *See also Peralta*, 597 F.3d at 79-80.

In *Peralta*, the First Circuit Court held that the "Court's review of counsel's performance must be deferential, and reasonableness must be considered in light of 'prevailing professional norms.'" 597 F.3d at 79, citing *Strickland*, 466 U.S. at 688.  As to counsel's deficient performance which may cause prejudice to the defendant, the Court in *Peralta* held, "[a]lthough he need not show 'that counsel's deficient conduct more likely than not altered the outcome' of his sentencing proceeding, he must establish 'a probability sufficient to undermine confidence in [that] outcome.'" *Peralta*, 597 F.3d at 80, citing *Strickland*, 466 U.S. at 693-694.

In *Yeboah-Sefah v. Ficco*, 556 F.3d 53, 70-71 (1st Cir. 2009), the Court held:

> "**To establish that counsel's performance was deficient, a defendant must show that it fell below an objective standard of reasonableness under the circumstances**." *Sleeper* [*Sleeper v. Spencer*, 510 F.3d 32, 38 (1st Cir. 2007)], 510 F.3d at 38 (citing *Strickland*, 466 U.S. at 687-88). "[J]udicial scrutiny of counsel's performance must be highly deferential," and "a reviewing court must not lean too heavily on hindsight: a lawyer's acts and omissions must be judged on the basis of what he knew, or should have known, at the time his tactical choices were made and implemented." *Ouber v. Guarino*, 293 F.3d 19, 25 (1st Cir.2002) (citing *Bell v. Cone*, 535 U.S. 685 (2002)). **To establish that the deficiency was prejudicial, defendant must show "that, but for counsel's unprofessional error, there is a reasonable probability that the result of the proceeding would have been different**." *Sleeper*, 510 F.3d at 39 (citing *Wiggins v. Smith*, 539 U.S. 510, 537(2003)). In other words, **prejudice requires "a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt**." *Strickland*, 466 U.S. at 695.  (Emphasis ours).

In *Parker*, the defendant alleged that if he had pled guilty instead of having gone to trial, he

13

would have gotten a lower sentence.  "The prejudice element is established in the plea bargaining context, as the Supreme Court found in *Hill v. Lockhart*, [474 U.S. 52, 59 (1985)], by showing a reasonable probability that for counsel's errors, the defendant "*would not have pleaded guilty and would have insisted on going to trial*."" *Parker*, 2010 WL 2652212, \*2, citing *Hill*, *supra*, (emphasis in the original).  The Government argued that "whether a petitioner 'could have negotiated a better plea deal is irrelevant in the ineffective assistance of context," *Parker*,  2010 WL 2652212, \*3, citing *Bethel v. United States*, 458 F.3d 711, 720 (7th Cir. 2006); *United States c. Wyatt*, 574 F.3d 455, 458 (7th Cir. 2009); *United States v. Martínez*, 169 F.3d 1049, 1053 (7th Cir. 1999).  However, in *Parker*, the Government also argued that the only court that has addressed an argument such as Parker's was *Short v. United States*, 471 F.3d 686, 696 (6th Cir. 2006) "(finding no prejudice even if the petitioner could have received a better sentence by entering an unconditional plea rather than taking counsel's advice and accepting a plea agreement)."  *Parker*, 2010 WL 2652212, \*3.

C.   *Ferdinand Padilla-Troche's Request to Vacate the Sentence Imposed.*

The Court is unpersuaded by the arguments presented by Habeas' counsel at the hearing held on the petition filed by Padilla-Troche under 28 U.S.C. § 2255.  The Court's decision set forth herein is based on the record, specifically on the statements made by Padilla-Troche, both at the Change of Plea and the Sentencing hearings.  Habeas' counsel simply cannot brush aside the statements and admissions made by Padilla-Troche, on the grounds that: (a) he only went as far as ninth grade in school, and (b) alleged ineffective assistance of counsel Rivera.  The record shows just the opposite. The Court briefly explains.

Reference is made to Padilla-Troche's statements and admissions made to the Court at the November 2, 2006 Change of Plea hearing, as to effective legal assistance of counsel Rivera.  *See*

14

Civil No. 08-1140 (DRD), Docket No. 1, Exhibit No. 7, page 19.

> THE COURT: Now, you have an attorney representing you.  May I have his name?
>
> THE DEFENDANT: Luis Rivera.
>
> THE COURT: Have you had time to consult with your attorney as to the case, in general, to your full satisfaction?
>
> THE DEFENDANT: Yes.

Reference is made to Padilla-Troche's statements and admissions made to the Court at the

February 2, 2007 Sentencing hearing, as to effective legal assistance of counsel Rivera.  *See* Docket

No. 8, pages 4-7.

> THE COURT: Very well.  Sir, your lawyer has advised the Court that he has reviewed the evidence in this case, that he has interviewed the United States agents, that he has examined the videotapes, that he has examined the documentary evidence, and he is convinced that the United States can in fact prove at least 50 grams, and that he has explained that to you **and that it is your determination to accept 50 grams of crack cocaine and hence that triggers the ten-year statutory minimum in this case**. (Emphasis ours.)
>
> Are you satisfied that those facts are correct and that you are, therefore, willing to follow the recommendation of your lawyer in this case?
>
> THE DEFENDANT: Yes.
>
> THE COURT: **In other words, you are satisfied not only as to the fact that the weight can be proven, but that you are satisfied that the recommendation made by your lawyer in this case?** (Emphasis ours.)
>
> THE DEFENDANT: Yes.
>
> THE COURT: Now, I must, however, warn you that that means that I cannot sentence you below 10 years.  I could sentence you to higher but I cannot sentence you below 10 years.  Are you aware of that?

15

THE DEFENDANT: Yes.

THE COURT: The only way that you can get away from that is by either a 5K or by another type of assistance to the United States; are you aware of that?

THE DEFENDANT: Yes.

. . .

MR. MILANES: At this time the Government, because the Defendant has conceded to the drug amount, the Government does apply and move the Court to provide a third point for acceptance of responsibility.

THE COURT: Very well.  So the Court accept – and I imagine you have no objection to that Mr. Rivera?

MR. RIVERA: I was going to argue that.

THE COURT: The Court, therefore, accepts the recommendation of the United States to grant this Defendant the third point for acceptance of responsibility.

Reference is also made as to Padilla-Troche's statements and admissions made to the Court at the November 2, 2006 Change of Plea hearing, as to his personal background, understanding and willfulness of the straight plea.  *See* Civil No. 08-1140 (DRD), Docket No. 1, Exhibit No. 7, pages 17-18; pages 23-26 (counsel Rivera's remarks).

THE COURT: Would the Defendant please state his full name?

THE DEFENDANT: Ferdinand Padilla Troche.

. . .

THE COURT: Sir, what is your age?

THE DEFENDANT: Thirty-nine.

THE COURT: What is the highest level of education that you have

16

achieved?

THE DEFENDANT: Ninth grade.

THE COURT: Please state your work employment experience immediately prior to your arrest.

THE DEFENDANT: I worked since I was 14 years old in restaurants. And then when I met my wife, I took care of her business.

THE COURT: And what is your own business?

THE DEFENDANT: It's also my wife's.  It's a grocery store.

. . .

THE COURT: We will proceed to the taking of your plea as to the charges that have been filed today.

Mr. Luis Rafael Rivera, do you have any statement to make regarding your client's competence to make a knowing, voluntary and willful plea today?

MR. RIVERA: Yes, Your Honor.

As previously stated to the Court, I have met the Defendant for, now for approximately six months.  The Defendant is a highly intelligent person, a businessman.  I believe he's qualified and competent to understand all of the proceedings before the Court.

He has been actively giving me instructions and has been intelligently deciding as to what is the best course of action to follow in this case. And today I met with him, last night, and he is fully competent to understand the proceedings before Your Honor.

. . .

THE COURT: Yes.  Even though the forfeiture civil case is different and stands apart from this, you accepting the fact that you are guilty to these three drug transactions will have a repercussion on your civil case.   And I ask you if you have discussed those potential repercussions in your civil case with Mr. Luis Rafael Rivera?

17

MR. RIVERA: The Defendant is concerned about the word "possible repercussions," the repercussions that this plea of guilty might have on his civil case.

What I have explained to him, according to the case law of the First Circuit and the Supreme Court of the United States, any forfeiture that might be pursued in the civil case has to be proportionate to the offense that he committed. If the Government is able to prove by a preponderance to the evidence that the property was either used as a means to conduct an illegal transaction in this case, a drug transaction, or that the property or bank accounts were the proceeds of an illegal transaction, or that the property or bank accounts were the proceeds of an illegal transaction, they might try to forfeit those properties. . . .

The Court notes that, at the February 2, 2007 Sentencing hearing, counsel Rivera made certain remarks as to Padilla-Troche's background, which should be mentioned, in regards as to counsel Rivera's legal assistance to the Petitioner. *See* Civil No. 08-1140 (DRD), Docket No. 1, Exhibit No. 8, pages 8-9.

MR. RIVERA: ... I have known the Defendant now for almost a year, had the opportunity to meet also the wife, who's present in court, who's also charged with similar offenses.

I met the Defendant's family. I went to his neighborhood in the Cabo Rojo and Mayaguez area, and he belongs to a close-knit family. He has his father, brothers and – parents, I should say father and mother, who raised him with a lot of morals and gave him the best they could.

The Defendant, I know, has strayed from being a good citizen in the sense that he made a couple of mistakes.

I believe, Your Honor, that rights now, right now he has understood the situation and that he wants to do good to the society in general, that the Defendant, I think is today taking a step toward his rehabilitation. I believe that the Court should give the Defendant the minimum statutory in this case, which is still a lot. The Court should take into consideration that he was offered a – at one time he was offered 60 months in this case.

18

> We signed the agreement, we struck a part of the agreement, which was critical for the Government to accept that deal, and now he's facing 10 years, which is double the amount that originally he was offered.  . . .

The statements of counsel clearly meant, that counsel was concerned that the court could provide a potential sentence of over ten years. This statement was made for the record in the presence of the defendant.

The Court also had previously explained to Padilla-Troche the statutory minimum and maximums (five to forty years) and the guidelines range. *See* Transcript of the straight plea hearingNovember 1, 2007, Civil No. 08-1140 (DRD), Docket 1-3 (pp. 29-30; 31-33). The court further warned the defendant as to his prior criminal record and a potential guideline range of 120-135 months. (Docket 1-3, pp. 32-33.) The court moreover repeated a similar warning as to the acceptance of 50 grams of cocaine base at the sentencing hearing when the defendant accepted 50 grams of cocaine base. (Docket 1.4, p. 5.).

After a careful review of the record, the Court finds that the record fails to support Habeas' counsel's arguments.  Defendant has failed to meet the two-prong test, to show ineffective assistance of counsel, that is: (a) counsel's representation was deficient; and (b) counsel's deficient performance prejudiced the defendant.  *See Parker*, 2010 WL 2652212, *2.  As stated above, "[t]o establish that counsel's performance was deficient, a defendant must show that it fell below an objective standard of reasonableness under the circumstances." *See Yeboah-Sefah v. Ficco*, 556 F.3d at 70-71 .

In the instant case, Habeas' counsel falls short of the required threshold, that is, to show that the legal assistance provided by counsel Rivera to Padilla-Troche was deficient, unreasonable, or

"fell below an objective standard of unreasonableness under the circumstances." On the contrary, Padilla-Troche's statements and admissions show, that notwithstanding his level of academic education, he understood perfectly the proceedings. Indeed, it is clear that Padilla-Troche's priority, at all times, was to protect his forfeited properties, regardless that this decision may entail the possibility of a longer imprisonment term if the Government withdrew the plea agreement.

Padilla-Troche understood perfectly, since at least the November 2, 2006 Change of Plea hearing, that the Government was ready to go to trial, and that the Government had the evidence to prove that, at the time of the arrest, Padilla-Troche had in his possession with intent to distribute at least more that 50 grams of cocaine base ("crack"), indeed he had 73.3 grams of cocaine base substance. This fact is not disputed by Habeas' counsel, as he submitted copies of the laboratory results. *See* Civil No. 08-1140 (DRD), Docket No. 1, Exhibit No. 4. But even if the quantity was only five grams to 49.8 grams of cocaine base, falling short of the statutory minimum of ten years by merely 2.0 grams, he was warned as to a sentence between five (5) to forty (40) years and he had been warned as to his prior criminal drug record.

Habeas' counsel Castro-Lang, however, disputes that counsel Rivera failed to correctly explain the laboratory results to Padilla-Troche. The Court rejects this argument, as being Habeas' counsel's personal inference of what may have happened, as opposed as to what indeed transpired, and as being purely speculative. Even assuming *arguendo* that counsel Rivera failed to explain the laboratory results to Padilla-Troche, it does not translate as to ineffective legal assistance of counsel that is prejudicial to the Petitioner. "[P]rejudice requires "a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Ficco*, 556 F.3d at 70-71. As stated above, "[a]lthough he [defendant] need not show 'that counsel's deficient conduct more

20

likely than not altered the outcome' of his sentencing proceeding, **he must establish 'a probability sufficient to undermine confidence in [that] outcome**.'" *Peralta*, 597 F.3d at 80, citing *Strickland*, 466 U.S. at 693-694.  (Emphasis ours).  *See also United States v. Rivera-Moreno*, ___ F.3d ___, 2010 WL 2802620 (1st Cir. 2010 (July 19, 2010) (Puerto Rico) (Torruella, J.)) ("After careful review of the record on the law, we find that the district court did not commit clear error in its factual findings, including the calculations of the drug quantities, and that the district court did not abuse its discretion in imposing Appellant's sentence").

Any potential error of counsel Rivera was cured by the Court, as the undersigned clearly explained Padilla-Troche that he could not be sentenced below ten (10) years, as he was accepting at the Sentencing hearing, under oath, at least 50 grams, pursuant to an agreement reached with the Government.  *See* Transcript of the February 2, 2007 Sentencing hearing, Civil No. 08-1140 (DRD), Docket No. 1, Exhibit No. 8, pages 2-5.

> MR. MILANES: Yes, Your Honor.  I believe that the parties have actually come to an agreement with respect to the amount of drugs in the case.
>
> MR. RIVERA: That is so, Your Honor.  I have talked to the agents in this case, which I met on a previous occasion.  I had talked to the prosecutor, I have reviewed all of the documents pertaining to the lab analysis and I have reviewed the videotapes of the transactions. And I believe that the Government will be able to prove the amount of narcotics was more than 50 grams of crack cocaine.
>
> THE COURT: United States, is that acceptable to you?
>
> MR. MILANES: Yes, Your Honor, that would be acceptable to us. That would result in a minimum statutory sentence of 10 years. . . .
>
> The safety valve is not applicable.
>
> THE COURT: Because of the criminal history points, right. . . .

So the deputy clerk will please take the sworn statement of the Defendant at this time.

THE CLERK: Yes, Judge.

THE DEFENDANT: Yes.

[After the defendant being sworn]

THE COURT: **Very well.  Sir, your lawyer has advised the Court that he has reviewed the evidence in this case, that he has interviewed the United States agents, that he has examined the videotapes, that he has examined the documentary evidence, and he is convinced that the United States can in fact prove at least 50 grams, and that he has explained that to you and that it is your determination to accept 50 grams of crack cocaine and hence that triggers the ten-year statutory minimum in this case.**

**Are you satisfied that those fact are correct and that you are, therefore, willing to follow the recommendation of your lawyer in this case?**

THE DEFENDANT: Yes.

THE COURT: **In other words, you are satisfied not only as to the fact that the weight can be proven, but that your are satisfied that the recommendation made by your lawyer is a sound recommendation?**

THE DEFENDANT: **Yes.** (Emphasis ours.)

THE COURT: Now, I must, however, warn you that that means that I cannot sentence you below 10 years.  I could sentence you to higher but I cannot sentence you below 10 years.  Are you aware of that?

THE DEFENDANT: Yes.

THE COURT: The only way that you can get away from that is by either a 5K or by another type of assistance to the United States; are you aware of that?

THE DEFENDANT: Yes.

22

Further, as well stated by the United States, the drugs amount that were lab tested amounted to a limited net weight 49.80 grams of cocaine base but defendant  was facing charges that included "possession with the intent to distribute" in excess of 5 grams, and not merely what was retrieved, seized and sent to the laboratory.  Further, Padilla-Troche was facing  based on 49.8 grams, an already warned statutory sentence of five (5) to forty (40) years, and was at risk of a sentence enhancement because of his federal prior drug case, his dismissed stated drug cases, his state convictions for other crimes and his pending state drug case which could move the court well beyond a ten sentence using defendant's recidivism proclivity to drug cases notwithstanding his criminal history. There was no guarantee that at 49.8 grams of cocaine base defendant was to receive less than ten years because of his proclivity to trafficking drugs. Defendant, therefore, suffered no prejudice and hence even if the first prong of ineffective assistance is met certainly the prejudice prong is not met. *Strickland  v. Washington*, 466 U.S. 684.

Hence, in the instant case, the record does not support a different result than to deny the petition of habeas. [9]

As to defendant's allegation that he would not have entered into the plea originally, the record shows that Padilla-Troche was well aware, at all times, that: (a) the amount of drugs had to be determined in a separate hearing; and, (b) there was a possibility that the amount of drugs would be higher than 50 grams of cocaine base; ( c) that even if the drug amount was less than 50 grams he was facing five (5) to forty (40) years in prison; (5) to forty (40) years in prison; (d) that he had a prior criminal federal record in drugs and various dismissed state drugs cases and still other drug

---

[9]    It is uncontested that Padilla-Troche had the intention to plead guilty, as a plea agreement was signed by all parties, at one time during the proceedings.  Hence, Padilla-Troche was well aware of the benefits of accepting the plea offer, and the consequences of rejecting it. *See infra* pages 14-16.

cases pending. Padilla-Troche not only accepted this fact, but proceeded to make a straight plea, and accepted that the amount of drugs be determined at a later sentencing hearing, as was specifically requested by his counsel Rivera, at the Change of Plea hearing. *See Infra* n. 2, and n. 5.

Hence, the court must reject defendant's argument that he would not have entered into a plea, specially when he himself expressed a reservation as to the amount of the drugs, accepting only five (5) grams per count "but not fifty" grams of cocaine base.

Habeas' counsel's argument as to the term of the sentence imposed is unsustainable under the record. Padilla-Troche, through counsel accepted, under oath, "5 grams or more, but less than 50 grams" at the Change of Plea hearing. At the Sentencing hearing, however, Padilla-Troche specifically accepted, **under oath**, and by agreement of the parties, "at least 50 grams of crack cocaine." *See* Transcript of the February 2, 2007 Sentencing hearing, Civil No. 08-1140 (DRD), Docket No. 1, pages 4-5. He further acknowledged that counsel interviewed all the witnesses (agents of the Government), which would trigger the ten (10) year statutory minimum sentence. *See* Transcript of the February 2, 2007 Sentencing hearing, Civil No. 08-1140 (DRD), Docket No. 1, pages 4-5. But most critical Padilla-Troche knew since the original plea that even at 5 grams of cocaine base he was facing a five (5) to forty (40) year potential prison sentence, knowing his federal and state prior criminal violations.

Habeas' counsel is over focusing only on the pure net weight of the drugs pursuant to the result of the lab reports, but forgets that at the Sentencing hearing, even if he did not accept 50 grams of cocaine base, the United States was to easily prove 49.80 grams of cocaine base together with the aggravating critical fact of a prior federal criminal conviction precisely as to drug trafficking together with several dismissed state drug cases and several other pending drug accusations in local court.

Defendant could have very easily surpassed the ten year sentence based purely on his drug trafficking recidivism proclivity.

The Court, therefore, finds that Padilla-Troche failed to show that counsel Rivera provided ineffective legal assistance, and that counsel Rivera's performance was prejudicial to him. The legal assistance provided by counsel Rivera to Padilla-Troche, simply is irrelevant to the plea negotiations, as Padilla-Troche knew what he wanted, what he was facing in terms of sentence, and what were his priorities, at the time he made a straight plea, to wit, to keep his forfeited properties. Padilla-Troche simply cannot now go back in time, and attempt now to resurrect a rejected prior plea agreement. The record shows that Padilla-Troche was well aware at the time of the consequences of rejecting the plea agreement. Padilla-Troche now has an after thought of attempting to resurrect a prior plea which he specifically rejected,[10] and is now attempting to cure his prior mistake of rejecting a plea by alleging a constitutional violation of ineffective assistance of counsel which is not sustained by the record. The Court finds that Padilla-Troche's Sixth Amendment rights were not violated, as the United States Constitution only warrants "an effective defense, not necessarily a perfect defense or

---

[10]        The sworn statements submitted by Padilla-Troche and his wife with the petition under § 2255, cannot be accepted by the Court, as they are defective on several grounds. First, both statements are in the Spanish language, and not duly translated, and consequently the Court must refuse them as a matter of law. *Puerto Ricans for Puerto Rico Party v. Dalmau*, 544 F. 3d 58 (2008); *Gonzalez-De-Blasini v. Family Department*, 377 F.3d 81, 89 (1st. Cir. 2004); *Dávila v. Corporación de P.R. Para la Difusión Pública*, 489 F. 3d 9, 13 (1st Cir. 2007); *Estades-Negroni v. Assocs. Corp. Of N. Am.*, 359 F. 3d 1, 2 (1st Cir. 2004). Second, the sworn statements are not dated. Third, the sworn statements are but an after thought which beg in the face of Padilla-Troche, clear acceptance, under oath, of "50 grams of crack cocaine" at the Sentencing hearing. *See* Transcript of the February 2, 2007 Sentencing hearing, Civil No. 08-1140 (DRD), Docket No. 1, pages 4-5. The Court cannot provide weight to the sworn statements, even if the statements were to be translated into English, as said statements fly directly against the facts specifically accepted by Padilla-Troche at the Sentencing hearing. Padilla-Troche was entitled pursuant to the cases of *United States v. Colón-Solis*, 354 F.3d 101, 103 (1st Cir. 2004); *United States v. Bradley*, 917 F.2d 601, 604 (1st Cir. 1990); *United States v. Laboy*, 351 F.3d 578 (1st Cir. 2003); *United States v. Flores de Jesús*, 564 F.3d 837 (1st Cir. 2009), to receive evidence as to his individual participation wherein he could have challenged the amount of drugs that the United States was ready to prove in the substantive three counts of "possession with intent to distribute" in the indictment. Padilla-Troche, however, accepted under oath, the amount of 50 grams of crack cocaine, hence, he is now married to that acceptance.

a successful defense." *Peralta*, 597 F.3d at 79.

Lastly, the Court finds that Padilla-Troche's level of academic education is irrelevant, as he showed throughout the proceedings that he was in control of his decisions, and knew exactly what he wanted.  This argument does not warrant a reconsideration of the sentence imposed by this Court.

**Conclusion**

In view of the foregoing, Padilla-Troche's petition under 28 U.S.C. § 2255 (Docket No. 1), is denied.  Judgment will be entered accordingly.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 6th  day of August 2010.

s/Daniel R. Domínguez
DANIEL R. DOMINGUEZ
U.S. DISTRICT JUDGE
